UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREGORY CARTER,

               Petitioner,               Civil Case No. 06-CV-10552

-vs-

                                             PAUL D. BORMAN
                                             UNITED STATES DISTRICT JUDGE

BLAINE C. LAFLER,

                                             PAUL J. KOMIVES
               Respondent.         UNITED STATES MAGISTRATE JUDGE
_____/

**OPINION AND ORDER
(1) ADOPTING REPORT AND RECOMMENDATION IN FAVOR OF REJECTING RESPONDENT'S ARGUMENT THAT PETITIONER'S CLAIM IS BARRED BY PROCEDURAL DEFAULT AND HOLDING AN EVIDENTIARY HEARING;
(2) TRANSFERRING THE CASE TO THE WESTERN DISTRICT OF MICHIGAN FOR AN EVIDENTIARY HEARING AND DETERMINATION**

Before the Court is Magistrate Judge Paul J. Komives July 2, 2008 Report and Recommendation ("Report") in favor of denying Respondent's argument that Petitioner's claim is procedurally defaulted and concluding an evidentiary hearing is necessary to resolve Petitioner's claims. (Dkt. No. 26). On July 14, 2008, Respondent filed objections to the Report (Dkt. No. 27), and Petitioner filed a Response on July 21, 2008. (Dkt. No. 28).

The Court now reviews the Objections, the Report and pertinent parts of the record *de novo* pursuant to 28 U.S.C. § 636(b).

**I.     BACKGROUND**

The factual background underlying Petitioner's claim was accurately summarized in Magistrate Judge Komives Report. Because neither party objects to that part of the magistrate judge's Report, the Court adopts that portion as follows:

        Petitioner Gregory Carter is a state prisoner currently confined in the Carson

City Correctional Facility in Carson City, Michigan. On May 9, 2001, petitioner was convicted of armed robbery, MICH. COMP. LAWS § 750.529, and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, following a jury trial in the Kent County Circuit Court. On July 5, 2001, petitioner was sentenced to a term of 15-40 years' imprisonment on the armed robbery conviction, and to a mandatory consecutive term of two years' imprisonment on the felony firearm conviction. Petitioner filed a direct appeal in the Michigan Court of Appeals, raising claims not relevant to the instant petition. His claims were rejected on appeal.

On July 30, 2002, the Grand Rapids Press reported on a story involving a computer glitch in Kent County's system for selecting jury venires [("Article")]. County officials conceded that their own review of their computer system revealed that "nearly 75 percent of the county's 454,000 eligible residents were excluded from potential jury pools since spring 2001" and that "[m]any blacks were excluded from . . . jury pools due to a computer glitch that selected a majority of potential candidates from the suburbs." The chief judge of the Kent County Circuit Court, George Buth, was quoted as saying, "There has been a mistake – a big mistake." The Grand Rapids Press articles explain that the error came to light after a Grand Rapids high school teacher and his students conducted a study of underrepresentation of minorities on Kent County juries. When the teacher reported the class findings to county officials they publicly insisted that the class's calculations were wrong, but when county officials finally conducted an internal study, they were startled to find

that those calculations were exactly right. The teacher was quoted as saying that he finally went public with his complaints because "nobody wanted to do anything" about the problem. An article of August 2, 2002, explains how the error occurred:

> Although 453,981 names and addresses of eligible jurors from Kent County were on the list provided by the Michigan Secretary of State from driver's license rolls, the computer got instruction to consider only 118,169 names.
> After proportionately selecting from all ZIP codes, the computer routinely still needed more jurors. The additional names then were automatically taken from the same abbreviated list, starting at the lowest numbered ZIP codes – which are in the suburbs.
> The second search process almost never went further than 49505 – leaving out areas where most of the county's minority population lives: Grand Rapids, Kentwood, Wyoming and Walker.
> The report [Kent County Jury Management Report] says the decision to have county workers take over updating the computerized operation in April of 2001 [from private contractors] was made to save time and money.

In light of these revelations, petitioner filed in the trial court a motion for relief from judgment pursuant to MICH. CT. R. 6.500-.508, claiming that he was denied his Sixth and Fourteenth Amendment right to jury drawn from a fair cross-section of the community. Relying on *People v. McKinney*, 258 Mich. App. 161-62, 670 N.W.2d 254, 258 (2003), the trial court denied the motion based on petitioner's failure to object to the jury array at trial, before the jury was sworn. *See People v. Carter*, No. 01- 00091-FC (Kent County, Mich., Cir. Ct. Oct. 27, 2003). The Michigan Court of Appeals and the Michigan Supreme Court denied petitioner's applications for leave to appeal in standard orders. *See People v. Carter*, 472 Mich. 912, 696 N.W.2d 714 (2005); *People v. Carter*, No. 254482 (Mich. Ct. App. Aug. 20, 2004).

On February 9, 2006, petitioner filed this application for the writ of habeas corpus pursuant to 28 U.S.C. § 2254. As grounds for the writ, petitioner raises the fair cross-section claim that he raised in his state court motion for relief from judgment. Respondent filed an answer on August 22, 2006. Respondent argues that petitioner's claim is barred by his procedural default in the state courts.

Petitioner filed a reply to respondent's answer on November 13, 2006. For the reasons that follow, the Court should conclude that petitioner's claim is not barred by a procedural default, and that an evidentiary hearing is necessary to resolve the claim.

## II.     OBJECTIONS

Respondent filed objections to the Report on July 14, 2008.  Respondent asserts that the "glitch" in the Kent County computer program did not impact the selection of Petitioner's jury.  Respondent also contends that Petitioner cannot establish his Sixth Amendment claim because the only evidence that Petitioner can offer to show systematic exclusion of jurors is the admitted error in the Kent County computer program.  Thus, Respondent appears to be arguing that an evidentiary hearing is not necessary because Petitioner's Sixth Amendment claim is fatally deficient.  Lastly, Respondent argues that because Petitioner did not raise his claim of ineffective assistance of counsel for failure to challenge the jury selection in the trial court, he may not assert ineffective assistance of counsel as cause for his procedural default.[1]

### A.     Ineffective Assistance of Counsel as Cause for Procedural Default

---

[1] Respondent merely repeats verbatim its argument from Respondent's Answer in Opposition to Petition for Writ of Habeas Corpus. (Dkt. No. 5 at 13–14).

The Court addresses Petitioner's last objection first. A procedural default is "a critical failure to comply with state procedural law." *Trest v. Cain*, 522 U.S. 87, 89 (1997). "When a habeas petitioner fails to obtain consideration of a claim by a state court . . . due to a state procedural rule that prevents the state courts from reaching the merits of the petitioner's claim, that claim is procedurally defaulted and may not be considered by the federal court on habeas review." *Seymour v. Walker*, 224 F.3d 542, 549-50 (6th Cir. 2000) (citing *Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87, (1977) and *Picard v. Connor*, 404 U.S. 270, 275-80 (1971)). A petitioner may still obtain habeas review of a procedurally defaulted claim if he can establish cause and prejudice for his default. Constitutionally ineffective assistance of counsel may constitute "cause" for a procedural default. *McCleskey v. Zant*, 499 U.S. 467, 494 (1991). Under this standard, cause may be established by "a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that 'some interference by officials' made compliance impracticable." *Amadeo v. Zant*, 486 U.S. 214, 222 (1998) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). That is, cause may be shown where "the factual basis of the claim was 'reasonably unknown' to the [petitioner's] counsel." *Jamison v. Collins*, 291 F.3d 380, 388 (6thh Cir. 2002) (quoting *Amadeo*, 486 U.S. at 222).

Here, as set forth by the Magistrate Judge, the factual basis of petitioner's fair cross-section claim was reasonably unknown to Petitioner and his counsel at the time the jury was sworn. The alleged systematic exclusion resulted from an unknown computer glitch that was not discovered until several months after Petitioner's conviction. Petitioner may assert ineffective assistance of counsel as cause for his procedural default.

    **B.**    **Fair Cross-Section Claim**

Under the Sixth Amendment, the jury venire from which a jury is selected must represent

5

a "fair cross-section" of the community. *Taylor v. Louisiana*, 419 U.S. 522, 528 (1975). To establish a prima facie fair cross-section violation, a defendant must show:

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Duren v. Misssouri*, 439 U.S. 357, 364 (1979).

First, Respondent claims that the programming error resulted in jury pools assembled between July 2001 and July 2002 being disproportionately underrepresented . Respondent argues that because Petitioner's trial was concluded before the glitch even occurred, Petitioner cannot establish a systematic underrepresentation of African Americans as a result of the flawed selection process.

Respondent's objection is not well-taken. According to Respondent's own brief, the Article states that eligible residents were excluded from potential jury pools since the spring of 2001, not the summer of 2001, as would be the case if the glitch began in July 2001. In addition, Respondent's brief goes on to cite the Article as stating that troubleshooters detected the error in mid-July of 2002, and that the error had gone undetected for sixteen months. Sixteen months before mid-July 2002 is mid-March 2001, not the July 2001 figure that Respondent's argument is based upon. Therefore, under Respondent's own recitation of the facts, there is a strong possibility that Plaintiff's jury, which convicted him on May 9, 2001, was selected through the flawed computer program. An evidentiary hearing is necessary to determine the exact date that Petitioner's jury pool was selected.

Respondent also contends that Petitioner fails the third prong of the *Duren* test because he

has not pointed to anything in the selection process that indicates that the alleged underrepresenation of African-Americans was due to the system itself. Respondent cites United *States v. Cecil*, 836 F.2d 1431, 1445 (4th Cir. 1988), for the proposition that "[a] panel of prospective jurors represents a fair cross -section of the community if it is gathered without *active* discrimination." (Obj. 5) (emphasis added). According to Respondent, since Kent County used a voter registration list, which is specifically sanctioned by Congress in 28 U.S.C. § 1863(b)(2), as the source of its jury selection process, Petitioner's panel was gathered without active discrimination.

Again, Respondent's objection is not well-taken. Contrary to Respondent's assertion, the mere use of a voter registration list does not mean that Kent County selected jury panels from April 2001 to July 2002 without active discrimination. Several courts, including the Sixth Circuit, have held that the relevant inquiry is not whether the underrepresentation of a distinctive group came as a result of intentional discrimination but rather whether the underrepresentation was systematic. *Smith v. Berghuis*, 543 F.3d 326, 335–36 (6th Cir. 2008); *see also Randolf v. California*, 380 F.2d 1133, 1141 (9th Cir. 2004) ("[D]isproportionate exclusion of a distinctive group from the venire need not be intentional to be unconstitutional, but it must be systematic."); *United States v. Jackman*, 46 F.3d 1240, 1242-43 (2d Cir. 1995).[2] "Systematic exclusion" "means[s] exclusion 'inherent in

---

[2] In *Jackman*, the Second Circuit, found systematic exclusion in circumstances very similar to those alleged in the instant action. There, the jury clerk for the District Court for the District of Connecticut adopted a procedure in an attempt to remedy a previous jury selection process that a district court there had found had inadvertently, but systematically, excluded from petit jury venires all residents of two counties with large minority populations. *Id.* at 1241. The exclusion of the residents from the two counties was the result of a computer error. Under the new procedure, the jury clerk selected names using a combination of the qualified names selected under the old procedure and names selected from the entire jurisdiction, including the two previously excluded counties. *Id.* at 1244. The Second Circuit found that the resulting underrepresentation was "'systematic -- that is, inherent in the particular jury-selection process utilized.'" *Id.* at 1244 (quoting Duren, 439 U.S. at 366). Accordingly, the Court concluded that

the particular-jury selection process utilized." *Smith*, 543 F.3d at 339 (quoting *Duren*, 439 U.S. at 366). The proof offered in support of "systematic exclusion"need not be unequivocal; it need only be "sufficient to support an inference that a particular process results in the underrepresenation of a distinctive group." *Id*. at 342–43.

Here, the Article and Respondent's own admissions point to the computer glitch as the source of the alleged underrepresentation. Because this fact is in dispute and because the state court did not hold a full and fair evidentiary hearing even though Petitioner could not have discovered the error until over a year after he was convicted, an evidentiary hearing in this Court is necessary. *See Sawyer v. Hofbauer*, 299 F.3d 605, 610–611  (6th Cir. 2002) (recognizing that "a habeas petitioner is generally entitled to such a hearing if he 'alleges sufficient grounds for release, relevant facts are in dispute, and the state courts did not hold a full and fair evidentiary hearing.'") (quoting *Stanford v. Parker*, 266 F.3d 442, 459 (6th Cir. 2001). Furthermore, in *Parks v. Warren*, 574 F. Supp. 2d 737 (E.D. Mich. 2008), Judge Lawson ordered an evidentiary hearing under nearly identical circumstances, involving the exact same computer glitch at issue in this case.

Respondent finally argues that Plaintiff fails the second element of the *Duren* test because he failed to present verifiable statistical data of racial underrepresentation.

This circuit follows the "absolute disparity" method for determining whether "the representation of African-Americans on venires is not 'fair and reasonable in relation to the number of [African-Americans eligible for jury service] in the community.'" *United States v. Forest*, 355 F.3d 942, 954 (6th Cir. 2004). "In the context of jury selection, one way to evaluate the fairness of

---

the appellant had established a prima facie fair cross-section violation.  *Id*. at 1248.

representation is by calculating 'absolute disparity,' which refers to 'the difference between the percentage of a certain population group eligible for jury duty and the percentage of that group who actually appear in the venire.'" *Id.* (quoting *United States v. Greene*, 971 F. Supp. 1117, 1128, n.11 (E.D. Mich. 1997)).

Again, the Court believes that an evidentiary hearing is proper here because Petitioner has not yet had the opportunity to make a showing of his prima facie case under *Duren*. Accordingly, the Court denies Respondent's objections to the Magistrate Judge's Report and grants Petitioner an evidentiary hearing on Petitioner's fair cross-section of the community claim is warranted. Insofar as Petitioner is incarcerated in the Western District of Michigan, was convicted in that district, and since the potentially relevant witnesses are in that District (Kent County), this Court, pursuant to 28 U.S.C. § 2241(d), transfers Petitioner's application for hearing and determination to the Western District of Michigan.

### III.    CONCLUSION

For these reasons, the Court

(1)   **DENIES** Respondent's Objections (Dkt. No. 27) and **ADOPTS** the Report and Recommendation (Dkt. No. 26) and

(2)   **TRANSFERS** the case to the Western District of Michigan for an evidentiary hearing and determination on the Sixth Amendment claim.

**SO ORDERED.**

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: March 10, 2009

9

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on March 10, 2009.

                                                            s/Denise Goodine
                                                             Case Manager