UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREGORY CARTER,

    Petitioner,

v.

Case No. 1:09-cv-215
Hon. Robert J. Jonker

BLAINE C. LAFLER,

    Respondent.
_____/

**REPORT AND RECOMMENDATION**

    Petitioner, a prisoner currently incarcerated at a Michigan correctional facility, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner initially filed this action in the Eastern District on February 9, 2006. Three years later, on March 10, 2009, the court in that district entered an opinion and order transferring this action to the Western District (sometimes referred to as the "Order of Transfer") with directions to perform an evidentiary hearing on petitioner's Sixth Amendment claim. *See* (docket no. 29).[1] For the reasons stated below, the undersigned concludes that an evidentiary hearing is not warranted and that the petition should be dismissed.

    **I.**    **Background**

    On May 9, 2001, a jury convicted petitioner of armed robbery, M.C.L. § 750.529, and possession of a firearm during the commission of a felony, M.C.L. § 750.227b. *People v. Gregory*

---

[1] The proceedings in the Eastern District appear as docket nos. 1 through 30.

*Carter*, No. 235590 (Mich. App. April 3, 2003).[2] The judge made the following findings at petitioner's sentencing:

> Well, I note that Mr. Carter is on -- at the time of this offense, was on parole for armed robbery, and, of course, these sentences have to be consecutive.
>
> I presided at the trial. It was a trial in which Mr. Carter was convicted by, I think you'd have to say overwhelming evidence. There was, among other things, a videotape of the robbery, and while such videotapes tend to be of rather poor quality, this one was excellent, and it showed very clearly Mr. Carter robbing this particular convenience store.

Sent. Trans. at 3-4 (docket no. 11). Petitioner was sentenced to two years incarceration at the Michigan Department of Corrections for the felony firearm charge, to be served consecutive "to the term of incarceration which he's currently serving and for which he was on parole at the time of this offense." *Id.* at 4. On the charge of armed robbery, petitioner was sentenced to a term of 15 to 40 years in prison for the armed robbery conviction, consecutive to the felony firearm sentence. *Id.*

Petitioner presented three issues in his direct appeal to the Michigan Court of Appeals:

I. Did the court err by allowing a police officer to testify as to her impressions of alleged statements made by [petitioner] in tape-recorded statements from the jail without a proper foundation for admission and in violation of the best evidence rule, denying [petitioner] his due process right to a fair trial?

II. Was [petitioner] denied the effective assistance of counsel where counsel failed to file an alibi notice or to investigate and prepare an alibi defense?

III. Did the trial court abuse its discretion in denying counsel's motion to withdraw?

---

[2] The portion of the trial transcript containing the announcement of the jury verdict (i.e., pages 100-102) is missing. *See* docket no. 10.

*See* Brief on Appeal (docket no. 15). The Michigan Court of Appeals affirmed the conviction. *People v. Gregory Carter*, No. 235590. Petitioner did not appeal any of these issues to the Michigan Supreme Court. *See* Corbin R. Davis Affidavit (docket no. 12).

On October 27, 2003, the state trial court entered an opinion and order denying petitioner's motion for relief from judgment.[3] The trial court's opinion and order summarized petitioner's three claims as follows:

> In his pleadings, Defendant seeks Relief from Judgment pursuant to MCR 6.501 on the grounds that he was denied his right to a fair trial due to flaws in the Kent County jury selection which he alleges "systematically excluded" minorities from the jury pool, ineffective assistance of counsel, and resentencing.

Opinion and Order at 1 (docket no. 13).

The court summarized its conclusions as follows:

> During his trial, the Defendant did not object to the composition of the jury, and therefore, this issue was not properly preserved and can not constitute grounds for a new trial pursuant to MCR 6.500. Likewise, Defendant has not met the burden necessary under *People v. Pickens*, 446 Mich 298, 314; 531 NW2d 797 (1994) which adopted the test for ineffective assistance of counsel that was articulated in *Strickland v. Washington*, 446 US 668, 694; 104 Sct 2052; 80 LE2d 674 (1984). Furthermore, Defendant's allegations of error relating to his sentence are without merit.

*Id.*

Petitioner's first two claims are relevant to this habeas action. The trial court set forth the following analysis with respect to the jury issue:

1. Systematic Exclusion of Minorities from the Jury Pool

> In 2001, Kent County's jury selection process came under intense media scrutiny. It was alleged that the system was fundamentally flawed, leading to a systematic exclusion of minority jurors from the jury pool. Following media

---

[3] The state court docket sheet does not reflect a filing date for this motion. *See* docket no. 16.

coverage of this problem, the County determine that a flaw in the random computer process could, in fact, lead to the disproportionate exclusion of minorities from the jury pool. The system was subsequently corrected.

Following this revelation many defendants requested new trials on the basis that they were denied their constitutional right to a fair trial by virtue of this flawed system. The Court of Appeals addressed this issue recently in *People v. McKinney*, ___ Mich App ___; ___ NW2d ___ (2003) (Slip copy). In this case the defendant claimed that African-Americans were "systematically excluded from Kent County's jury venires when her trial was conducted." *Id.* At ___. The defendant in this case cites the same newspaper articles that the defendant in the instant matter has attached as exhibits. The Court of Appeals stated:

> Questions concerning the systemic exclusion of minorities in jury venires are generally reviewed de novo. *People v. Hubbard (After Remand)*, 217 Mich.App. 459, 472, 552 N.W.2d 493 (1996). "A criminal defendant is entitled to an impartial jury drawn from a fair cross section of the community." *Id.*, citing *Taylor v. Louisiana*, 419 U.S. 522, 526-531, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). To establish a prima facie violation of the fair cross-section requirement, the defendant bears the burden of proving "that a distinctive group was underrepresented in his venire or jury pool, and that the underrepresentation was the result of systematic exclusion of the group from the jury selection process." *People v. Smith*, 463 Mich. 199, 203, 615 N.W.2d 1 (2000), *citing Duren v. Missouri*, 439 U.S. 357, 364, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979).

The Court of Appeals went on to deny the request for a new trial because defendant had not raised the issue before the jury was empannelled and sworn. *Id.* at ___. *See also People v. Dixon*, 217 Mich App 400, 404; 552 NW2d 663 (1996). Likewise, the defendant in the instant matter failed to raise this as an objection during his trial, and the motion for a new trial should similarly be dismissed.

*Id.* at 2-3.[4]

The trial court also denied petitioner's ineffective assistance of counsel claim, providing in pertinent part as follows:

---

[4] The Michigan Court of Appeals decision in *McKinney* has since been published as *People v. MicKinney*, 258 Mich. App 157; 670 NW2d 254 (2003).

4

> The Defendant's argument, in sum, is that his trial counsel was ineffective due to his failure to investigate a possible alibi defense. The defendant alleges that he was at a treatment facility in Illinois at the time of the incident. However, this defense was raised on the evening following the first day of the trial. Furthermore, the defense counsel did contact the treatment facility and was informed that the Defendant had not been admitted to the program. Additionally, the defense counsel attempted to contact the Defendant's parole officer, but was unable to do so. The Defendant, therefore, has failed to establish that the defense counsel acted unreasonably under the circumstances, and his claim of ineffective assistance of counsel must fail. *People v. Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000).

*Id.* at 4.

Petitioner filed a delayed application for leave to appeal this order to the Michigan Court of Appeals, raising two issues (in his words):

> I. Did the trial court rule erroneously, when it rule that by defendant counsel failure to object to the composition of the jury at trial, therefore, his issue was not properly preserved and can not constitute ground for a new trial pursuant to MCR 6.500.
>
> II. Was the defendant denied his United States Sixth and Fourteen Amendments rights to representation by an jury from a fair cross-section of the community. Whereas, there was a serious flaw in the Kent County computerized jury selection system which systematically excluded minority jurors from the jury pool.

Application for leave to appeal (docket no. 13).

The Michigan Court of Appeals denied the delayed application "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Gregory Carter*, No. 254482 (Mich. App. Aug. 20, 2004) (docket no. 13). Petitioner raised the same two issues in his application for leave to appeal to the Michigan Supreme Court, which denied the application "because defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Gregory Carter*, No. 127081 (Mich. May 31, 2005).

Petitioner raised the following issue in his habeas petition filed in the Eastern District on February 9, 2006 (in his words):

> Whether or not petitioner was denied due process of law in violation of his Sixth and Fourteenth Amendments of the United States Constitution to be represented by a jury from a fair cross section of the community, whereas, there was a serious flaw in the selection process of the Kent County jury selection pool which was programmed to systematically exclude minorities from the jury selection process.

Petition at ¶ 13 (docket no. 1). In his attached memorandum of law, petitioner also argued that the trial court "ruled erroneously when it ruled that by petitioner's counsel's failure to object to the composition of the [jury] at trial, therefore, the issue was not properly preserved and cannot constitute grounds for a new trial pursuant to MCR 6.500." *Id.* at p. 17. In his answer, respondent asserted that petitioner's claim regarding the systematic exclusion of minorities from the jury pool was barred from habeas review by procedural default in the state court. In petitioner's reply, he points to a Grand Rapids Press article from October 20, 2002, in which the Kent County Circuit Court's Chief Judge acknowledged the problem. Petitioner further contends that a competent attorney could not have provided assistance under these circumstances, because the flaw in the jury selection procedure was discovered long after his trial.

In reviewing the petition, the magistrate judge in the Eastern District summarized two newspaper articles from the *Grand Rapids Press* which purportedly explained the "computer glitch" which resulted in the omission of eligible jurors with certain ZIP codes in Kent County. *See* Report and Recommendation at 2-3 (docket no. 26).[5] The magistrate judge concluded that while petitioner's jury selection claim was procedurally defaulted, the procedural default should be

---

[5] The newspaper articles summarized in the magistrate judge's report were not part of the court record.

excused because "neither petitioner nor his counsel had any reason to suspect that the fair cross-section requirement had been violated, nor any reason to conduct an investigation into Kent County's jury selection practices." *Id.* at 5. The magistrate judge did not address the issue of prejudice with respect to the procedural default claim,[6] but nevertheless determined that the court should reject respondent's procedural default defense. *Id.* The magistrate judge concluded that an evidentiary hearing was necessary:

> Although this evidence [of systematic exclusion] exists in the abstract, what is lacking here is evidence specifically directed at the manner in which the jury venires were composed at the time of petitioner's trial. In order to resolve this claim, the court "must compare the difference between the percentage of the distinctive group among the population eligible for jury service and the percentage of the distinctive group" in the pool from which the jury was drawn. *United States v. Grisham*, 63 F.3d 1074, 1078 (11th Cir. 1995). For example, even assuming that the computer error occurred in the compiling of the venires, if the percentage of African-Americans in the pool from which the venires were drawn was nonetheless representative of the percentage of African-Americans in the county, there would be no fair cross-section claim notwithstanding that some individual African-Americans may have been improperly excluded. The circumstances relevant to petitioner's own case -- namely, the composition of the pool from which the jurors were drawn and the composition of petitioner's venire -- are simply not reflected in the record before the Court. Further, to the extent there was any systematic underrepresentation, the record does not establish whether this underrepresentation resulted from the computer glitch or from factors attributable to the actions of private citizens. Thus, an evidentiary hearing is necessary to resolve this claim.

*Id.* at 8 (footnote omitted).

In the Order of Transfer entered on March 10, 2009, the court expressed its belief that petitioner did not have an opportunity to make a showing of a prima facie case under *Duren v. Missouri*, 439 U.S. 357. Order of Transfer at p. 9. The court adopted the newspaper summaries and recitation of facts as set forth in the magistrate judge's report because neither party objected to the

---

[6] *See* § II.B., *infra*.

7

report. *Id.* at p. 1. The court rejected petitioner's objection to the magistrate judge's finding that this claim was procedurally defaulted, but concluded there was cause for failure because the alleged flaw in the computer had not yet been discovered:

> Here, as set forth by the Magistrate Judge, the factual basis of petitioner's fair cross-section claim was reasonably unknown to Petitioner and his counsel at the time the jury was sworn. The alleged systematic exclusion resulted from an unknown computer glitch that was not discovered until several months after Petitioner's conviction. Petitioner may assert ineffective assistance of counsel as cause for his procedural default.

*Id.* at 5. Because petitioner was both convicted and incarcerated in the Western District and the potentially relevant witnesses are located in the Western District (i.e., Kent County), the court transferred this action to this district "for an evidentiary hearing and determination on the Sixth Amendment claim." *Id.*

## II. Evidentiary hearing

### A. Background

Evidentiary hearings are not mandatory in § 2254 cases, but are held at the discretion of the court. *See Vroman v. Brigano*, 346 F.3d 598, 606 (6th Cir. 2003). 42 U.S.C. § 2254(e)(2) limits a federal court's discretion to grant an evidentiary hearing. *Id.* In this regard, Rule 8 of the Rules Governing Section 2254 Cases in the United States District Courts ("Rule 8") provides that:

> the judge, after the answer and the transcript and record of state court proceedings are filed, shall . . . determine whether an evidentiary hearing is required. If it appears that an evidentiary hearing is not required, the judge shall make such disposition of the petition as justice shall require.

In this case, the undersigned respectfully disagrees with the March 10, 2009 order for an evidentiary hearing in this action. *See Gillig v. Advanced Cardiovascular Systems, Inc.*, 67 F.3d 586, 589 (6th Cir. 1995) ("[p]rejudgment orders remain interlocutory and can be reconsidered

at any time") (quoting 1b James W. Moore et al., *Moore's Federal Practice* ¶ 0.401 (2d ed. 1994)). As a general rule, a transferee court should be cautious in disturbing orders previously issued by the transferring court. *See Gillig*, 67 F.3d at 589-90 (observing that the utility of transferring cases would be seriously compromised if a transferee judge hastily disturbed the rulings of the transferor judge). *Id.* Nevertheless, because "[i]t is within the sole discretion of the court to determine if a prior ruling should be reconsidered," the Sixth Circuit does not impose any conditions or limitations upon this court's power to review a prior ruling of another district court. *Id.* at 590, quoting *United States v. Todd*, 920 F.2d 399, 403 (6th Cir. 1990). Certainly, of course, the court in the Eastern District did not presume to order this court to conduct a hearing, but felt such a hearing was appropriate. With due respect, I find for reasons not addressed in that order (but discussed below) that an evidentiary hearing is not necessary because petitioner's claim is, in fact, barred by the doctrine of procedural default.

### B. Procedural default

Where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A procedural default "provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice." *Gray v. Netherland*, 518 U.S. 152, 162 (1996). Not every state procedural rule will warrant application of the procedural default doctrine. Only a procedural rule that was

9

"'firmly established and regularly followed' by the time as of which it [was] to be applied," *Ford v. Georgia*, 498 U.S. 411, 424 (1991), will support application of the doctrine. "For a habeas claim to be procedurally defaulted on the basis of a state procedural rule, the petitioner must have violated a procedural rule, but the state court must also have based its decision on the procedural default." *Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000). MCR 6.508(D) is a valid procedural bar for habeas purposes. *See Canty v. Cason*, No. 02-2030, 2003 WL 152322 (6th Cir. Jan. 16, 2003); *Burroughs v. Makowski*, 282 F.3d 410, 414 (6th Cir. 2002); *Luberda v. Trippett*, 211 F.3d 1004, 1008 (6th Cir. 2000).

The Kent Circuit Court was the first state court to review petitioner's habeas claims, which were raised in his motion for relief from judgment under MCR 6.500 *et seq*. Both the Michigan Court of Appeals and the Michigan Supreme Court denied petitioner's application for leave to appeal the trial court's order denying post-judgment relief because he failed to meet the burden of establishing entitlement to relief under MCR 6.508(D). As the last state court rendering judgment in the case, the Michigan Supreme Court's decision denying petitioner's claims on the basis of the state procedural bar of MCR 6.508(D) prevents habeas review. *See Burroughs*, 282 F.3d at 414; *Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000). Accordingly, petitioner's claims are procedurally defaulted. *See* Order of Transfer at pp. 4-5.

However, the undersigned concludes that this court should re-consider the Order of Transfer to the extent that order found that petitioner had shown good cause to excuse the procedural default. The "good cause" determination is inconsistent with previous decisions entered in this district in similar cases. *See, e.g.*, *Wellborn v. Berghuis*, No. 1:05-cv-346, 2009 WL 891708 at \*21-

10

27 (W.D. Mich. March 31, 2009), appeal pending, No. 09-1539 (6th Cir.); *Burros v. Curtin*, 1:05-cv-701, 2009 WL 736066 at *5-12 (W.D. Mich. March 18, 2009).

Since petitioner procedurally defaulted this claim in state court, the claim is barred unless he demonstrates either: (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice. *See House v. Bell*, 547 U.S. 518, 536-37 (2006)*; Murray v. Carrier*, 477 U.S. 478, 495 (1986); *Hicks v. Straub*, 377 F.3d 538, 551-52 (6th Cir. 2004).

To show cause sufficient to excuse a failure to raise claims on direct appeal, petitioner must point to "some objective factor external to the defense" that prevented him from raising the issue in his first appeal. *McCleskey v. Zant*, 499 U.S. 467, 497 (1991); *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

Petitioner's claim arises from the Sixth Amendment's guarantee that a criminal defendant shall have an impartial jury drawn from a fair cross-section of the community. *Duren v. Missouri*, 439 U.S. 357, 358-59 (1979); *Taylor v. Louisiana*, 419 U.S. 522, 526-31 (1975). The petit jury does not have to mirror the community, but distinct groups cannot be systematically excluded from the venire. *See, United States v. Jackman,* 46 F.3d 1240, 1244 (2nd Cir. 1995). To establish a *prima facie* violation of the fair cross-section requirement, petitioner bore the burden of proving "that a distinctive group was under-represented in his venire or jury pool, and that the under-representation was the result of systematic exclusion of the group from the jury selection process." *People v. Smith,* 463 Mich. 199 (2000), citing *Duren v. Missouri, supra.*

11

While petitioner bases the present habeas claim on the ground that he "was found guilty by an all white jury," Petition at p. 4, he did not challenge the jury array at trial. If petitioner felt the jury venire was unbalanced, he did not say so. Rather, at the close of the jury voir dire, petitioner's counsel stated that "the defense is satisfied." Trial Trans. at 72 (May 7, 2001) (docket no. 8). The jury was then empaneled and sworn. There were no objections regarding the composition of the jury array at any time during the trial, much less the voir dire, and trial counsel's statement constituted an express waiver of the issue. Petitioner did not raise this issue in his direct appeal. Rather, he first raised it in his motion for relief from judgment. At that time, petitioner apparently relied on a newspaper article from October 20, 2002 to support his claim that Kent County's jury selection process "was programmed in a manner that it would systematically exclude minorities from the jury selection pool." Petitioner's Memorandum of Law at 4.

For cause, petitioner contends that the error was not procedurally defaulted because the flaw in the jury selection process, i.e., the under-representation of African Americans, was not discovered until after he filed his appeal of right. The court disagrees. Simply seeing an array when the deficiency is apparent provides a defendant and his attorney with adequate notice. Petitioner did not need to know the precise nature of the computer problem to object to the lack of African Americans on the jury array.

In *People v. Hubbard,* 217 Mich. App. 459, 465-66 (1996), the court emphasized the significance of viewing the array. The court in that case held that the defendant was not required to challenge the juror allocation process "<u>before</u> defendant actually viewed the array." (Emphasis added.) Once the defendant viewed the array he raised his objection. The difference between

*Hubbard* and the present case is that the defendant in *Hubbard* made his challenge after viewing the array and *prior* to the jury being sworn, and petitioner did not.

Similarly, in *People v. Oliphant,* 399 Mich. 472, 501 (1976), the defendant waited until after the jury selection and until the first day of trial to challenge the jury array, alleging that it deprived him of his right to an impartial jury drawn from a fair cross section of the community because of the absence of persons between the ages of 18 and 21. The Michigan Supreme Court held the challenge to be untimely because the claim was based "on the fact that no persons between the ages of 18 and 21 *appeared on the array*." (Emphasis added.)

By contrast, in *People v. Bryant*, No. 241442, 2004 WL 513664 (Mich. App. March 16, 2004), the defendant was convicted in Kent County during the time period affected by the "computer glitch" in this case, but *did* make a timely objection during the voir dire process that he had been deprived of his Sixth Amendment right to an impartial jury drawn from a fair cross-section of the community. As a result of his timely objection, he was determined to have preserved his claim and was afforded an evidentiary hearing by the Michigan Court of Appeals.

Thus, the law in Michigan is unequivocal that you are considered to be on notice once you have viewed the array and you must raise a timely objection before the jury is empaneled and sworn.

The Michigan Court of Appeals, in addressing the argument that some criminal defendants could not have known the reason for the purported discrepancy in the venire panel at the time of trial, has been careful to make the distinction between (1) the opportunity defendants had to notice the fact of a discrepancy and raise the issue, and (2) not knowing the reason why it

occurred. In *People v. Barnes,* No. 244590, 2004 WL 1121901 (Mich. App. Jan. 15, 2004), the court observed:

> We recognize that perhaps the alleged unconstitutional jury selection *process* could not have been specifically identified at the time of trial. *But, in light of the all-white jury, it was incumbent on defendant to make a timely challenge or raise an objection. A concern on defendant's part about the racial makeup of the venire should have arisen, and a timely challenge may very well have led to discovery of possible problems in the selection process. . . . [B]ecause one of the elements is under-representation in a specific defendant's jury array or venire, defendant, when faced with an all-white jury, could have, minimally, raised an objection below.*

*People v. Barnes,* 2004 WL 1121901 at *3 (emphasis added).[7]

Here, both petitioner and his counsel were satisfied with the racial composition of the jury, which included only white jurors. If petitioner had observed that the array did not represent a fair cross-section of the community, it is, of course, not necessary to know the reason why in order to object. Rather, <u>it is by raising the question</u> that a court has the opportunity to inquire and determine if there has been a constitutional violation. For the federal courts to ignore the established state requirement of a timely objection is not only an affront to the state courts, but it gives a petitioner (and presumably countless other unhappy defendants convicted in Kent County during this same period) a second bite at the apple, because of the possibility of a constitutional violation that could have been investigated at the time and was not. Since the Order of Transfer did not directly address this issue, and since a decision on this question in favor of respondent would

---

[7] For a discussion on the general proposition that a challenge to the array must be made in a timely fashion or it is deemed waived, *see* 50A CJS *Juries* § 361 ("Generally, the challenge should be raised before various events, such as the start of jury selection, or the start of voir dire. While it has been held that a motion made prior to the impaneling and swearing in of the jury is timely, a motion generally is untimely if it is made after the jury has been impaneled and sworn, or after the trial has been entered on, or after the verdict.") (citations omitted).

preclude the need for what would be a very costly and complex evidentiary hearing, I believe that requiring such a hearing without resolving the issue would be premature.

Petitioner's failure to demonstrate cause for his procedural default prevents federal review of his habeas claims unless the court's failure to do so will result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. The miscarriage-of-justice exception only can be met in an "extraordinary" case where a prisoner asserts a claim of actual innocence based upon new reliable evidence. *House*, 547 U.S. at 537. A habeas petitioner asserting a claim of actual innocence must establish that, in light of new evidence it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *Id.* (*citing Schlup v. Delo*, 513 U.S. 298, 327 (1995)). Petitioner has made no such claim or showing of actual innocence in this case.

Accordingly, petitioner's claim is procedurally barred on habeas review.[8]

---

[8] Recently, the Sixth Circuit decided the case of *Smith v. Berghuis,* 543 F.3d 326 (2008), cert. granted, __ S. Ct. __ (2009 WL 1370175) (Sept. 30, 2009), which held that a trial court in Kent County violated a defendant's Sixth Amendment right to a jury drawn from a fair cross-section of the community. I mention the case only to distinguish it. In *Smith,* the Sixth Circuit held that the petitioner's Sixth Amendment right to a trial by a jury drawn from a fair cross-section of the community was violated when the underrepresentation of African Americans in the venire panel occurred as a result of systematic exclusion due to circumstances entirely unrelated to the present case. Smith was tried in 1993, when Kent County assigned jurors to district court panels prior to assigning them to circuit court panels. *Id.* at 331-32. Kent County also excused jury duty absences for several social and economic reasons such as lack of transportation, child care or inability to take time off from work. *Id.* at 332, 340. Smith, an African American, argued that both of those practices resulted in the underrepresentation of African Americans on the venire panels in the circuit courts. *Id.* at 339. The practice at issue in *Smith* ended in 1993.

Petitioner's trial occurred eight years later, in 2001, and involved a completely different problem, namely the purported computer glitch referenced in this case.

In stark contrast to the present case, Smith properly objected to the composition of the jury venire panel and petit jury prior to the jury being sworn. *Id.* at 330. After denying Smith's request, the trial court found that "there's nothing to indicate to me that . . . the manner of selecting jurors is anything other than impartial and that there's been any type of subjective selection of jurors to create a problem in terms of representation." *Id.* Because the issue was properly preserved, the habeas court did not need to address

15

### III. Recommendation

I respectfully recommend that the evidentiary hearing be cancelled and that the habeas petition be **DENIED**. Rule 8, Rules Governing § 2254 Cases in the United States District Courts.


Dated: December 18, 2009                    /s/ Hugh W. Brenneman, Jr.
                                            HUGH W. BRENNEMAN, JR.
                                            United States Magistrate Judge



ANY OBJECTIONS to this Amended Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

---

whether Smith had procedurally defaulted his claim. The Sixth Circuit, therefore, was able to address the merits of Smith's claim. Here, petitioner never objected to the composition of the jury venire panel, and never gave the trial court an opportunity to address the issue while it was still feasible to do so.