UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREGORY CARTER,

       Petitioner,

v.

       CASE NO. 1:09-CV-215

       HON. ROBERT J. JONKER

BLAINE C. LAFLER,

       Respondent.

_____/

## ORDER APPROVING REPORT AND RECOMMENDATION

The Court has reviewed the Magistrate Judge's Report and Recommendation (docket # 39) and Petitioner's objection to it (docket # 41). Under the Federal Rules of Civil Procedure, where, as here, a party has objected to portions of a Report and Recommendation, "[t]he district judge . . . has a duty to reject the magistrate judge's recommendation unless, on de novo reconsideration, he or she finds it justified." 12 WRIGHT, MILLER, & MARCUS, FEDERAL PRACTICE AND PROCEDURE § 3070.2, at 381 (2d ed. 1997). Specifically, the Rules provide that:

> The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

FED. R. CIV. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1)(C). De novo review in these circumstances requires at least a review of the evidence before the Magistrate Judge. *Hill v. Duriron Co.*, 656 F.2d 1208, 1215 (6th Cir. 1981). After de novo review, the Court concludes that Petitioner Gregory Carter's petition for habeas corpus under 28 U.S.C. § 2254 should be denied.

Following a trial in May 2001, a jury convicted Mr. Carter of armed robbery under Mich. Comp. Laws 750.529 and possession of a firearm during the commission of a felony under Mich. Comp. Laws 750.227b. At Mr. Carter's sentencing, the judge found that "Mr. Carter was convicted by . . . overwhelming evidence," including "a videotape of the robbery" that was of "excellent" quality and "showed very clearly Mr. Carter robbing this particular convenience store." (Docket # 11, Sent. Trans. at 4) The court sentenced Mr. Carter to two years of incarceration for the felony firearm charge, to be served consecutive to the term of incarceration that Mr. Carter was already serving. He was further sentenced to fifteen to forty years of incarceration for the armed robbery conviction, to be served consecutive to the felony firearm sentence. (*Id.*)

After pursuing his direct appeals without success, Mr. Carter filed in state court a motion for relief from judgment on three grounds, including an ineffective assistance of counsel argument and the contention that he was denied his right to a fair trial due to flaws is the Kent County jury selection process, which he alleges systematically excluded minorities from the jury pool. The state court rejected both contentions, in part because Mr. Carter failed to object to the jury before it was sworn in as a panel. Mr. Carter's delayed state-court application for leave to appeal and his application to the Michigan Supreme Court both were denied under Mich. Ct. R. 6.508(D).

In February 2006, Mr. Carter filed in the Eastern District of Michigan this petition under section 2254. He alleged that he was denied due process of law, in violation of the Sixth and Fourteenth Amendments, when he was tried by a jury selected from a jury pool that systematically excluded minorities from the jury selection process. The magistrate judge in the Eastern District of Michigan concluded, and the district judge agreed, that although Mr. Carter had procedurally defaulted his jury selection claim, the default should be excused because the "glitch" had not been

2

publicly disclosed at the time of Mr. Carter's trial, and "neither petitioner nor his counsel had any reason to suspect that the fair cross-section requirement had been violated, nor any reason to conduct an investigation into Kent County's jury selection process." (Docket # 26, Report and Recommendation at 5) The magistrate concluded that an evidentiary hearing was necessary to determine whether the pool from which Mr. Carter's jury venire was drawn was unrepresentative as a result of the computer glitch. (*Id.* at 8) The district judge adopted the Report and Recommendation, and it further concluded that Mr. Carter could assert ineffective assistance of counsel as cause for his procedural default. (Docket # 29 at 5) The court then transferred this action to the Western District of Michigan "for an evidentiary hearing and determination of the Sixth Amendment claim." (*Id.* at 9)

## Discussion

In section 2254 cases, hearings are not mandatory and are held only at the discretion of the court. *See Vroman v. Brigano*, 346 F.3d 598, 606 (6th Cir. 2003); 42 U.S.C. § 2254(e)(2); *see also* Rule 8, Rules Governing Section 2254 Cases in the United States District Courts. *Day v. McDonough*, 547 U.S. 198, 209 (2006). This Court also has discretion to determine if a prior ruling made by the transferor court, including an order to conduct an evidentiary hearing, should be reconsidered. *Gillig v. Advanced Cardiovascular Sys.*, 67 F.3d 586, 590 (6th Cir. 1995). Transfer of a case does not "freeze prior rulings." *Id.* (quotation omitted). A transferee court's reconsideration of a prior order, however, should not be undertaken lightly, but it should be done only for "convincing reasons." *Id.* The magistrate judge in this district has filed a Report and Recommendation articulating the reasons he finds convincing for dismissing the habeas petition without an evidentiary hearing. Mr. Carter has objected to the Report and Recommendation.

3

The Report and Recommendation recommends that Mr. Carter's section 2254 petition be denied without a hearing. It concludes that Mr. Carter procedurally defaulted his federal claims in state court under an independent and adequate state rule. It further concluded that Mr. Carter's claim was barred because Mr. Carter failed to meet either of the burdens that would permit his defaulted claim to be reviewed in a 2254 motion: (1) he failed to demonstrate cause and prejudice because he did not object to the composition of the jury, and (2) he failed to demonstrate the risk of a fundamental miscarriage of justice because the record established overwhelming evidence of his guilt. *See Hicks v. Straub*, 377 F.3d 538, 551-52 (6th Cir. 2004). The Report and Recommendation finally concluded that, because Mr. Carter's claim is barred by procedural default, the court need not conduct an evidentiary hearing into the substance of Mr. Carter's claim.

Mr. Carter first objects that a transferee court may reconsider a prior order only if the transferor court abused its discretion in promulgating the order. This contention is without merit. On appeal, the Court of Appeals reviews for abuse of discretion the transferee court's reconsideration of the transferor court's order. *See Gillig*, 67 F.3d at 590. Here, however, the Court is not reviewing on appeal the orders of the Eastern District in this case, and the Court is not limited by an appellate standard of review when reconsidering a prejudgment order. Instead, the Court is taking up the case as it left the Eastern District and continuing a "logical progression toward judgment" just as though the case had originated in this Court. *See id.* at 589. And just as with a case that originated in this Court, a prejudgment order remains interlocutory and "can be reconsidered at any time" if reconsideration is in the interest of progressing to final judgment. *See id.*

Mr. Carter also objects on the ground that he cannot establish cause and prejudice without an evidentiary hearing regarding the composition of his jury pool. This contention also is without merit. Mr. Carter cannot establish good cause because he did not object at the close of jury voir dire to the composition of the jury venire. Indeed, defense counsel stated expressly that the defense was "satisfied" with the jury. (Docket # 8, Tr. Trans. at 72). Mr. Carter further did not object to the jury at any time during trial or on his direct appeals. As discussed thoroughly in the Report and Recommendation, Mr. Carter did not need to know about the precise nature of the computer problem in the jury selection to see a deficiency in the jury array. *See also Wellborn v. Berghuis*, — F. Supp. 2d —, No. 1:05-CV-346, 2009 WL 891708, *3 (W.D. Mich. Mar. 31, 2009). The law in Michigan is unequivocal that a defendant is on notice once he has viewed the array, and he must raise timely any objection to it before the jury is empaneled and sworn. *See id.*; *see also People v. Hubbard*, 217 Mich. App. 459, 552 N.W.2d 493 (Mich. Ct. App.1996); *People v. Oliphant*, 399 Mich. 472, 250 N.W.2d 443 (1976); *People v. Bryant*, No. 21442, 2004 WL 513664 (Mich. Ct. App. Mar. 16, 2004); *People v. Barnes*, No. 244590, 2004 WL 1121901 (Mich. Ct. App. Jan.15, 2004). As in *Wellborn*, Mr. Carter "absolutely personally observed the racial composition of his jury venire and finally selected jury." 2009 WL 891708 at *3. Apparently he was content with the venire and his jury because his counsel stated expressly that the defense had no objection to the panel. *See id.* If Mr. Carter "was unhappy with the distribution he could have said so even if he had no reason to know at the time the particulars of a possible computer glitch that contributed to the composition of the array." *Id.* Accordingly, Mr. Carter cannot establish good cause for his procedural default with or without an evidentiary hearing to determine the actual composition of his jury array. *See id.*

Mr. Carter finally objects to the Report and Recommendation on the basis of *Amadeo v. Zant*, 486 U.S. 214 (1988). His reliance on *Amadeo* is misplaced. *Amadeo* involved a death penalty case in which the district attorney and jury commissioners of Putnam County, Georgia, intentionally engineered a scheme to under-represent African Americans and women in the County's juries, and to conceal the scheme by keeping the under-representation sufficiently subtle to fall within the presumptively acceptable statistical guidelines of prevailing case law. *See id.*; *Wellborn*, 2009 WL 891708 at *3. The very point of the intentional and diabolical scheme was to exclude African Americans and women in a way that made it virtually impossible to detect. A litigant looking at any given venire, intentionally engineered to under-represent African Americans and women, was not automatically on notice of a problem. Under those unique circumstances, the Court refused to set aside that the trial court's factual finding that defense counsel did not intentionally bypass a jury challenge, and permitted the habeas claim to proceed. This case is entirely different. There is no allegation, much less evidence, of any intentional effort to exclude any particular racial or gender group from the jury venire. At most, Mr. Carter claims that, as described in a newspaper article, an inadvertent computer glitch for some undetermined period of time may have had the unintended effect of limiting the number of African Americans summoned for jury duty. A litigant who was actually dissatisfied with the number of available African American jurors in this scenario was on notice of any under-representation of African Americans in the jury pool by his view of the array, which was all he needed to lodge an objection, if he wished to do so. He did not, and he thereby procedurally defaulted the claim.

**Certificate of Appealability**

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if the petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted, and each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy v. Ohio*, 263 F.3d 467 (6th Cir. 2001). Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 529 U.S. at 484. "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court is denying Mr. Carter's claim concerning the jury venire composition on procedural grounds, but in a unique setting. Reasonable jurists could certainly conclude either that the district court has erred in denying the jury venire composition claim on procedural grounds or that Petitioner should be allowed to proceed further. Indeed, this has already happened in several similar cases. *See, e.g., Parks v. Warren*, 574 F. Supp. 2d 737, 744-47 (E.D. Mich. 2008); *Powell v. Howes*, No. 05-71345, 2007 WL 1266398 (E.D. Mich. May 1, 2007). Because the Court finds that reasonable jurists could conclude that this Court's dismissal of Mr. Carter's due process claim as

barred by procedural default was debatable or wrong, the Court will grant Mr. Carter a certificate of appealability on this issue.

**ACCORDINGLY, IT IS ORDERED**

1. The Report and Recommendation of the Magistrate Judge, filed December 18, 2009, is approved and adopted as the opinion of this Court.

2. Mr. Carter's motion for habeas corpus under section 2254 is **DENIED**.

3. A certificate of appealability is **GRANTED**.


Dated:   January 8, 2010            /s/ Robert J. Jonker
                                    ROBERT J. JONKER
                                    UNITED STATES DISTRICT JUDGE